[Doc. No. 9]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| MARY DEERING, JANE AND JOHN DOE PLAINTIFFS 1-5,<br><br>          Plaintiffs,<br><br>     v.<br><br>DONALD ELLWOOD GRAHAM, ET AL.,<br><br>          Defendants. | Civ. No. 14-3435 (NLH/JS) |

**OPINION**

This Opinion addresses whether a client who signs a brokerage agreement containing an arbitration clause should be compelled to arbitrate all of her claims against her broker and the brokerage firm he represents. Defendants Donald Ellwood Graham, Graham Financial Services, LLC, Executive Wealth Advisors, LLC, and J.P Turner & Company (collectively, "defendants") seek to compel arbitration and stay plaintiff's lawsuit pending the results of plaintiff's arbitration hearing. Plaintiff Mary Deering, a former client of defendants, opposes defendants' motion [Doc. No. 11]. Defendants have also filed a reply [Doc. No. 12]. The Court recently held oral argument. For the following reasons, defendants' "Motion to Stay Action and Compel Plaintiff to Arbitrate Claims" [Doc. No. 9] is GRANTED in part and DENIED in

part. Plaintiff's financial mismanagement claims against all defendants, including those involving tax-relates issues, will be sent to arbitration. Conversely, plaintiff's NJLAD claim, asserted against all defendants, and sexual battery and assault claims, asserted against Graham individually, fall outside the scope of her arbitration agreement and will be litigated in this Court. However, this civil action will be stayed pending the completion of the arbitration hearing.

**BACKGROUND**

J.P. Turner & Company ("J.P. Turner") is a brokerage and investment banking firm which operates through independent branch offices, including Executive Wealth Advisors. Cert. of Donald Ellwood Graham ("Graham Cert.") ¶¶ 1-2. In 2007, plaintiff contacted Donald Ellwood Graham ("Graham") to obtain financial advice and services. Compl. ¶ 44. Thereafter, plaintiff opened a J.P. Turner brokerage account and completed an initial account application on December 7, 2007. Graham Cert. ¶ 3, Exs. 1-2. The new account application and Customer Agreement were signed by Graham, as a J.P. Turner Representative, and Nicholas Saunders ("Saunders"), as the Office Manager for the J.P. Turner branch operated by Executive Wealth Advisors. Id.

2

In December 2011, "as a result of a change in clearing agents" plaintiff executed an updated J.P. Turner new account form and Customer Agreement. Defs.' Br. at 3. At the same time, plaintiff also executed a Transfer on Death Account and a Margin Agreement. Graham Cert. ¶ 5, Exs. 4-5. About six months later, in June 2012, plaintiff executed an updated J.P. Turner account application. Defs.' Br. at 3.[1]

The six brokerage agreements plaintiff signed all contained arbitration clauses. The parties agree that the arbitration provisions are substantially similar in form and substance. For

---

[1] To aid in reference, the following chart summarizes the six agreements plaintiff signed by date, form, and signatory.

| Date of Agreement | Description of Form Containing Arbitration Provision | Signatories |
|---|---|---|
| 12/03/07 | Account Application | Deering and Graham (as a J.P. Turner Account Executive) |
| 12/31/07 | Brokerage Account Application | Deering, Saunders (as an Office Manager) and Graham (as a "Registered Rep") |
| 12/20/11 | New Account Form | Deering, Saunders (as the Principal of J.P. Turner) and Graham (as a "Representative") |
| 12/20/11 | Transfer on Death Account Agreement | Deering |
| 12/20/11 | Margin Agreement | Deering |
| 06/28/12 | Account Application | Deering, Saunders (as the J.P. Turner Principal) and Graham (as a J.P. Turner Representative) |

3

the sake of consistency the Court will focus its analysis on the language of the June 2012 arbitration provision. This arbitration clause states:

> **Arbitration**
>
> This is a pre-dispute arbitration clause. Under this clause, which becomes binding on all parties when you sign below, you and JPT agree as follows:
>
> A. All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
>
> * * *
>
> All controversies that may arise between you, us and the clearing firm (including but not limited to, controversies concerning any account, order, or transaction, or the continuation, performance, interpretation, or breach of this or any other agreement between you and us, whether entered into or arising before, on, or after the date this Agreement is effective) shall be determined by arbitration in accordance with the rules then prevailing of FINRA, and/or any other securities self-regulatory organization or securities exchange of which the entity against whom the claim is made is a member, as you may designate.

Graham Cert., Ex. 6.

Plaintiff's twelve-count complaint contains two general claims. One, plaintiff alleges defendants breached their financial services contracts. See Compl. at 27-40. The Court refers to this claim as plaintiff's financial mismanagement claim which includes

4

tax-related issues. For example, plaintiff claims that defendants fraudulently induced her to enter into various securities contracts, failed to monitor her investments and subjected her to tax penalties. Compl. at 27, 34. Two, plaintiff alleges Graham engaged in an improper sexual relationship and sexually abused her. Compl. ¶¶ 5-51. The Court refers to this as plaintiff's sex-related claim. Without getting into the details regarding the sordid allegations in the complaint, plaintiff generally alleges, inter alia, that Graham forced her into a nonconsensual sexual relationship and subjected her to severe and pervasive sexual harassment. Compl. at 19-24. Plaintiff asserts claims against all defendants which include violations of the New Jersey Law Against Discrimination, the Securities Act of 1933 and the Exchange Act of 1934, breach of contract, breach of the implied covenants of good faith and fair dealing, duress, assault and sexual battery. See generally Compl.[2]

---

[2] Plaintiff's complaint pleads twelve causes of action: violations of the New Jersey Law Against Discrimination (NJLAD), violations of the Securities Act of 1933 and the Exchange Act of 1934, breach of contract, negligent entrustment, "breach of fiduciary duty and respondeat superior in violation of the implied promise of fair and honest dealing of brokers", fraudulent concealment/misrepresentation, breach of implied covenant of good faith and fair dealing, negligence, duress, negligent hiring, assault, and sexual battery. All of plaintiff's claims are made against all defendants with the following exceptions: (1) the duress claim is not alleged against Graham Financial Services, LLC; (2) the negligent hiring claim is only alleged against Executive Wealth Advisors and J.P Turner; and (3) the assault and sexual battery claim is only alleged against Graham.

One of the defendants is Graham Financial Services, LLC, a financial services firm owned by Donald Graham. Plaintiff alleges that when Graham rendered her tax advice he was acting in his capacity as her tax advisor and not as her broker, thus implicating Graham Financial Services. Pl.'s Opp at 11. Although Graham Financial Services is not a party to any of the agreements containing arbitration clauses, defendants (including Graham Financial Services) argue they may compel plaintiff to arbitrate her claims. Defendants argue that the claims against Graham Financial Services are "intertwined" with plaintiff's other claims. Defs.' Reply at 12. Further, defendants generally assert that all of the conduct alleged in plaintiff's complaint was committed "through and in the course of Mr. Graham's role as her professional financial advisor" and is therefore subject to the arbitration agreements contained within the contracts plaintiff signed. Defs.' Br. at 4. Conversely, it is plaintiff's position that her tax-related claims are only directed to Graham in his capacity as a tax preparer for Graham Financial Services and that her tax-related claims are not subject to any of the arbitration provisions. Pl.'s Opp. at 12. Further, plaintiff argues that her NJLAD, assault, and sexual battery claims do not fall within the scope of her arbitration provisions. Pl.'s Opp. at 7. Plaintiff

6

also argues she should not be compelled to arbitrate any of her claims because she signed the documents at issue under duress. Pl.'s Br at 2-9.

**DISCUSSION**

### 1. Standard of Review

The Third Circuit recently clarified the standard of review a court should apply in deciding a motion to compel arbitration. See <u>Guidotti v. Legal Helpers Debt Resolution, L.L.C.</u>, 716 F.3d 764 (3d Cir. 2013). Where it is apparent on the face of the complaint and the documents relied upon in the complaint that the claims contained within the complaint are subject to arbitration, the case is considered under a motion to dismiss standard pursuant to Fed. R. Civ. P. 12(b)(6). <u>Id.</u> at 744. The motion to dismiss standard is, however, inappropriate where "either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate or the opposing party has come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." <u>Id.</u> (quotation and citation omitted). Under these circumstances, the court must apply the summary judgment standard. Here, because

plaintiff has come forward with some reliable evidence challenging the agreement to arbitrate (see discussion, infra), the summary judgment standard applies.

A court may grant summary judgment if the pleadings, depositions, answers to interrogatories and admissions show that there is no genuine issue as to any material fact, and if the court determines that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). When determining the existence of a genuine issue of material fact in the context of arbitration, "[t]he party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009) (internal quotation and citation omitted).

**2. The Federal and New Jersey Arbitration Acts**

The parties' arbitration agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., and the New Jersey Uniform Arbitration Act of 2003 ("NJUAA"), N.J.S.A. 2A:23B-1, et seq. Washington v. CentraState Healthcare Sys., Inc., C.A. No. 10-6279, 2011 WL 1402765, at *4 (D.N.J. Apr. 13, 2011). Section 2 of the FAA provides: "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under Section 3 of the FAA, a party may apply to a federal court for a stay of the trial of an action "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. "The NJUAA has a substantive provision nearly identical to the FAA's § 2, see N.J.S.A. 2A:23B-6(a), and a mechanism for staying court proceedings and compelling arbitration similar to the FAA's §§ 3 and 4, see N.J.S.A. 2A:23B-7." Washington, 2011 WL 1402765, at *4.

Courts apply a two-step test in determining whether a cause of action is supplanted by an existing arbitration agreement. Aetrex Worldwide, Inc. v. Sourcing for You Ltd., 555 Fed. Appx. 153, 154 (3d Cir. 2014). Courts first determine whether a valid agreement to arbitrate exists. If a valid agreement exists, a court should then determine whether the agreement encompasses the dispute at issue. Id. If an agreement to arbitrate exists and the dispute is encompassed by the agreement, the decision to enforce arbitration is mandatory. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985); Great Western Mortg. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997). In this case plaintiff contests both requisites to a finding of arbitrability. Plaintiff also contests

9

that a valid agreement exists, and that the present dispute falls within the scope of the agreement.

"When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability." Animal Sci. Products, Inc. v. China Minmetals Corp., C.A. No. 05-4376 (KM), 2014 WL 3695329, at *46 n.26 (D.N.J. July 24, 2014) (citing Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005)). This presumption is not absolute, however, and should be discharged "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and . . . where the presumption is not rebutted." Granite Rock Co. v. International Broth. of Teamsters, 130 S. Ct. 2847, 2858 (2010) (quotation and citation omitted). In other words, because arbitration is a matter of contract, a party cannot be required to arbitrate disputes "which [s/]he has not agreed so to submit." BG Grp., PLC v. Republic of Argentina, 134 S. Ct. 1198, 1206 (2014) (quoting Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)). In the absence of "clea[r] and unmistakabl[e]" evidence, "it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter." Granite Rock Co., 130 S. Ct. at 2858 (quotation and citation omitted).

If a valid and enforceable arbitration agreement is broad in its scope, "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 556 (3d Cir. 2009) (quotation and citation omitted); see also Robinson v. PNC Bank, C.A. No. 13-07818 (SRC), 2014 WL 1716248, at *2 (D.N.J. Apr. 30, 2014) (accord). If the arbitration agreement is itself narrowly crafted, it should not be presumed that the parties agreed to arbitrate any and all disputes. Id.

Importantly, where a complaint contains both arbitrable and non-arbitrable claims, the court must compel arbitration of the arbitrable claims. KPMG LLP v. Cocchi, 132 S. Ct. 23, 26 (2011) (citation omitted). This is required even where the bifurcated action may result in "the possibly inefficient maintenance of separate proceedings in different forums." Id.; see also Waskevich v. Herold Law, P.A., 431 N.J. Super. 293, 300 (App. Div. 2013) (citation omitted) ("federal law 'requires piecemeal resolution when necessary to give effect to an arbitration agreement.'"). Thus, the Court must determine which of plaintiff's claims are arbitrable and which are not, and then refer the arbitrable claims

11

to arbitration. <u>See</u> <u>Waskevich</u>, 431 N.J. Super. at 300 (bifurcating NJLAD claim from arbitrable claims).

### 3. Whether a Valid Agreement Exists and Plaintiff's Defense of Duress

The Court first considers whether a valid agreement exists, i.e., the viability of plaintiff's duress defense. Plaintiff argues the arbitration agreement entered into on June 28, 2012 "was the result of undue influence [and] coercion exerted by defendant Donald Graham." Pl.'s Br. 3-4. Thus, plaintiff argues, she did not enter into the agreement "knowingly and voluntarily." Pl.'s Br. at 4. In support of her argument plaintiff cites to conversations and sexual relations which occurred between her and Graham. <u>See</u>, <u>e.g.</u>, Cert. of Mary Deering ("Deering Cert.") ¶ 10. Plaintiff also alleges that Graham rushed her into signing the June 28, 2012 contract, containing around "10 papers", and that Graham did not explain or point out the arbitration provision. Deering Cert. ¶ 11.[3] Plaintiff alleges that after she signed the papers at Graham's direction he exposed himself to her. <u>Id.</u> ¶ 13.

---

[3] At oral argument plaintiff argued the arbitration clause should be set aside because defendants, and more specifically Graham, did not specifically point out or explain the arbitration provision before the documents at issue were signed. This argument runs counter to well-established black letter law. Signatories to a contract are bound by the written terms regardless if those terms were pointed out or explained. "It will not do for a man [or woman] to enter into a contract, and, when called upon to respond to its obligations, to say that [s/]he did not read it when [s/]he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on

In response, defendants argue that plaintiff cannot avoid arbitration by claiming undue influence, coercion or duress with respect to a single clause rather than a stand-alone agreement to arbitrate. Defs.' Reply at 3 (citing Nicholson v. CPC Int'l, Inc., C.A. No. 88-45, 1988 WL 35382, at *2 (D.N.J. Apr. 18, 1988), aff'd, 877 F.2d 221 (3d Cir. 1989) (the Supreme Court draws a "distinction between fraud in the inducement of an agreement to arbitrate and fraud in the inducement of a contract which contains a promise to arbitrate. While the former is for a federal court to determine, the latter is for an arbitrator.") (citation omitted)). In other words, because plaintiff is claiming that she signed an integrated contract containing an arbitration clause under duress, rather than just a stand-alone agreement to arbitrate, the duress defense must be decided by an arbitrator and not this Court.[4] Therefore, plaintiff's argument that she signed the June 2012 agreement under duress does not warrant the denial of defendants' motion. To be sure, however, although this Court will not address the duress defense, the issue should be decided by an arbitrator.

_____

which they are written." Upton v. Tribilcock, 91 U.S. 45, 50 (1875); see also Morales v. Sun Constructors, Inc., 541 F.3d 218, 221 (3d Cir. 2008) (accord).

[4] While the Court is not ruling on the issue, it does not go unnoticed that plaintiff's duress argument is undercut by the fact that she signed five other agreements containing an arbitration clause. Plaintiff is not claiming she signed these five agreements under duress, including the agreement signed on December 3, 2007, which was before the alleged harassment started.

13

## 4. Scope of the Arbitration Clause

Having determined that a valid arbitration provision exists, and that an arbitrator and not this Court will decide the duress defense, the Court turns to whether the arbitration provision encompasses the claims at issue and what parties are bound to arbitrate. Plaintiff argues the broad scope of the arbitration provision renders the provision unenforceable, and even if the provision is enforceable, the allegations contained in the complaint fall outside its scope. Pl.'s Br. at 5.[5] In conjunction with these arguments plaintiff also asserts that defendants Donald Graham, in his capacity as president of Graham Financial Services, and Graham Financial Services, were not parties to the contracts she signed and therefore they may not compel arbitration.[6]

The Court first considers which parties are bound to arbitrate and then considers what claims are subject to arbitration. Plaintiff argues that the agreements do not bind Donald Graham, in his capacity as President of Graham Financial Services, and Graham Financial Services, because they "were not privy to the Arbitration

---

[5] The Court notes that plaintiff has not cited a single case to support her argument.

[6] Defendants do not directly address whether Graham could have proffered tax advice in his capacity as a broker but insist that plaintiff's single specific claim against Graham and Graham Financial Services is "intertwined" with plaintiff's other claims. Defs.' Reply at 12.

Agreement" and do not have "any direct link" to J.P Turner or Executive Wealth Advisors. Pl's Opp. at 12. In support of this position plaintiff points out that some of her allegations concern Graham in his capacity as plaintiff's tax preparer rather than as her broker. Thus, plaintiff argues, the agreements she signed with J.P. Turner and Executive Wealth Advisors cannot bind Donald Graham, in his capacity as President of Graham Financial Services, and Graham Financial Services.

Even though Graham Financial Services is not a party to plaintiff's arbitration agreements, it may still compel plaintiff to arbitrate her claims. The Third Circuit has identified two avenues which permit courts to bind nonsignatories to an arbitration clause.

> First, courts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement. Second, courts have bound a signatory to arbitrate with a non-signatory at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.

E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 199 (3d Cir. 2001) (internal

citations and quotations omitted). The first category of cases involves nonsignatories who at one time embraced the contract but during litigation attempt to repudiate the arbitration terms. Id. at 200. The first theory is inapplicable because here nonsignatories (Graham and Graham Financial Services) are seeking to compel a signatory (plaintiff) to arbitrate, not the reverse. See Precision Funding Grp., LLC v. Nat'l Fid. Mortgage, C.A. No. 12-5054 (RMB/JS), 2013 WL 2404151, at *4 (D.N.J. May 31, 2013) (citing Hautz Constr. v. H & M Dep't Store, C.A. No. 12-3478 (FLW), 2012 WL 5880370, at *14 n.8 (D.N.J. Nov. 20, 2012) (stating that cases relying on the "direct benefit" theory of estoppel apply only to non-signatories trying to avoid arbitration)). In the second category of cases, "courts have bound a signatory to arbitrate with a non-signatory 'at the non-signatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract ... and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'" Id. at *4 (citing DuPont, 269 F.3d at 299).

In Precision Funding this Court recognized two situations in which a nonsignatory may compel arbitration under this second

16

category: (1) where the issues to be litigated are "inextricably intertwined" with the arbitration agreement such that the claims asserted against the signatory and the non-signatory are identical and (2) where there is a requisite nexus of the claim to the contract together with an integral relationship between the non-signatory and the other contracting party. Id. at *5. In Precision Funding, the plaintiff sued a business competitor for hiring its former employees who were subject to a non-compete agreement which contained an arbitration provision. Plaintiff also sued its former employees, and, pursuant to the arbitration provision, those claims were sent to arbitration. The business competitor defendant, a nonsignatory to the non-compete agreement, sought to enforce the arbitration provision against plaintiff in its action. After surveying applicable case law, the Court compelled arbitration because it found that there was an inextricable connection between the signatories and nonsignatories to the arbitration provision. The Court found that the essence of the claims against the nonsignatories were essentially the same as those against the signatories and that the causes of actions were nearly identical. Id. at *7.

This case is analogous to Precision Funding because there is an inextricable connection between plaintiff's financial

17

mismanagement claims and the signatories and nonsignatories to her agreements. The nexus and intricate connections between the defendants is obvious. As to plaintiff's claims, she only alleges one claim (consisting of a single paragraph contained within Count Four in a 54-page complaint) specifically against Graham Financial Services and Graham, as its president.[7] See Compl. at 29-34 ¶ 20. This tax-related claim is inextricably intertwined with plaintiff's financial mismanagement claims. Additionally, Count Four, a claim pursuant to the Securities Act of 1933 and the Exchange Act of 1934, is alleged against all defendants. Indeed, plaintiff refers to all defendants, rather than separating them out, throughout her complaint. This demonstrates plaintiff's acknowledgment of the interconnectedness of the defendants and her claims. See Guidotti v. Legal Helpers Debt Resolution, LLC, C.A. No. 11-1219 (JBS/KMW), 2012 WL 3262435, at *7 (D.N.J. Aug. 7, 2012) (permitting nonsignatory defendant to compel plaintiff to arbitration and finding persuasive that plaintiff sought relief from signatory and nonsignatory defendants "under exactly the same counts."). Further, plaintiff's claims against the defendants stem

---

[7] The single paragraph states: "20. Defendants Graham and Graham Financial prepared and filed plaintiff['s] tax returns, despite the lack of any real tax planning by defendants Graham and Graham Financial for plaintiff. Defendants Graham and Graham Financial exposed plaintiff to numerous IRS penalties." Compl. at 34.

18

from similar alleged conduct. For these reasons, the Court finds the claims against Graham, as president of Graham Financial Services and Graham Financial Services are inextricably intertwined with the other financial claims asserted against the signatories (J.P Turner and Executive Wealth Advisors). Thus, the Court finds Graham and Graham Financial Services have standing to compel plaintiff to arbitrate the claims asserted against them. See Precision Funding, 2013 WL 2404151 at *7.

Next, the Court considers whether all of plaintiff's claims, which include allegations of financial mismanagement, assault, and sexual battery, are subject to arbitration, i.e. whether the agreement encompasses these claims. See Trippe Mfg. Co., 401 F.3d at 532. In order to make this finding, it is necessary to examine the intended scope of the arbitration agreement.

When deciding whether parties agreed to arbitrate a certain matter, courts must apply state law contract principles governing the formation of contracts. First Options, 514 U.S. at 944. Under New Jersey law, "[i]n determining whether a particular dispute is encompassed by an arbitration provision, as in construing any other contractual provision, a court's 'goal is to discover the intention of the parties[,]' which requires consideration of the 'contractual terms, the surrounding circumstances, and the purpose

19

of the contract.'" <u>Washington</u>, 2011 WL 1402765, at *5 (citing <u>Angrisani v. Fin. Tech. Ventures, L.P.</u>, 402 N.J. Super. 138 (N.J. Super. Ct. App. Div. 2008)). The "'proper starting point is the plain meaning of the Arbitration Agreement.... Other interpretive principles need be employed only if the Agreement's plain meaning cannot be determined.'" <u>Id.</u> (quoting <u>Steigerwalt v. Terminix Intern. Co., LP</u>, 246 Fed. Appx. 798, 801 (3d Cir. 2007)).

In this case, the arbitration provision states that it applies to "all controversies" which "arise" between the signatories. "Courts have generally read the terms 'arising out of' or 'relating to' a contract as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in any way to the contract." <u>Guidotti v. Legal Helpers Debt Resolution, L.L.C.</u>, 866 F. Supp. 2d 315, 331-32 (D.N.J. 2011) <u>vacated and remanded on other grounds</u>, 716 F.3d 764 (3d Cir. 2013) (citation omitted). "A dispute or claim 'relates to' the contract whenever the dispute requires 'reference to the underlying contract.'" <u>Id.</u> (citation omitted). The Court finds that plaintiff's contract and financial mismanagement claims, such as breach of contract and breach of the implied covenants of good faith and fair dealing, are subject to arbitration because they are covered by the plain meaning of the

arbitration provision.[8] Conversely, plaintiff's NJLAD, assault, and sexual battery claims are not covered when one examines the contract terms, the surrounding circumstances, and the purpose of the contract. Washington, 2011 WL 1402765, at *5. The arbitration provision at issue qualifies the term "all controversies" with the parenthetical "including but not limited to, controversies concerning any account, order, or transaction, or the continuation, performance, interpretation, or breach of this or any other agreement between you and us[.]" Graham Cert., Ex. 6. The Court finds that the arbitration provision is not susceptible of an interpretation which includes claims such as sex discrimination, assault and sexual battery. Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 55 (3d Cir. 2001) ("An order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (citation omitted); see also Brayman Const. Corp. v. Home Ins. Co., 319 F.3d 622, 626 (3d Cir. 2003) (stating that allegations are arbitrable only if they "touch matters" covered by the contract) (citation omitted). The Court agrees with plaintiff

---

[8] While it is plaintiff's position that all of the agreements are invalid because they were signed under duress, plaintiff does not forcefully dispute that her financial services claims fall within the scope of the arbitration provisions.

that the term "all claims" within the arbitration agreement is most plainly read to mean all "financial claims." Pl.'s Opp. at 7. To be sure, plaintiff would not have had contact with Graham but for her financial services contracts. However, the resolution of plaintiff's claims of a sexual nature do not require reference to her contracts. Although there is a modicum of overlap between plaintiff's financial and sexual claims, the claims are separate. While resolution of plaintiff's financial claims requires reference to her contracts, this is not true of her other claims. As a result, the Court finds with "positive assurance" that plaintiff's NJLAD, assault, and sexual battery claims are not covered by the arbitration clauses.

The parties have not provided, and the Court is unable to find, a case analyzing whether NJLAD, assault, and sexual battery claims can be read to be covered by an arbitration provision contained within a brokerage agreement. Nonetheless, cases in the employment context are sufficiently analogous to provide guidance here.

The same conclusion that NJLAD claims are not arbitrable was reached in Washington v. CentraState Healthcare Sys., Inc., C.A. No. 10-6279, 2011 WL 1402765 (D.N.J. Apr. 13, 2011). In that case, the court considered whether an arbitration provision within an

22

employment agreement which covered "any dispute . . . arising out of or related to this Agreement" could reasonably be read to include an NJLAD claim. The court found that it could not and that any alternative reading would "stretch the meaning of 'arising out of or relating to' too far." Washington, 2011 WL 1402765 at *5. Additionally, the court cited to New Jersey Supreme Court precedent which holds that courts will not assume employees intend to waive their statutory rights unless the agreement so provides in unambiguous terms. Id. at *6 (citing Garfinkel v. Morristown Obstetrics & Gynecology Assoc., 168 N.J. 124 (2001)). Here, because plaintiff's arbitration provision cannot be reasonably read to encompass NJLAD claims, and the provision does not unambiguously require arbitration of plaintiff's statutory claims, plaintiff's NJLAD claim is not subject to arbitration.

As to the other two claims at issue, courts are divided as to whether claims akin to sexual battery and assault are independent of an employment relationship and subject to arbitration. Compare Jones v. Halliburton Co., 583 F.3d 228, 236 (5th Cir. 2009) (employee's claims of assault and battery were not "related to" her employment and thus not arbitrable under the FAA) with Forbes v. A.G. Edwards & Sons, Inc., C.A. No. 08-552, 2009 WL 424146, at *8 (S.D.N.Y. Feb. 18, 2009) (employee's sexual assault claim was

23

"related to" the plaintiff's employment when committed by another company employee at a work conference). With this context in mind, the Court finds that plaintiff's claims of sexual battery and assault are further removed from the purview of a financial agreement than is plaintiff's NJLAD claim. The reference to "all claims" within the subject arbitration provision cannot be reasonably interpreted to include plaintiff's claims of assault and sexual battery. Thus, these claims are not subject to arbitration.

In support of their assertion that "all claims" includes the NJLAD, assault, and sexual battery claims, defendants cite to Steigerwalt v. Terminix Int'l Co., LP, 246 Fed. Appx. 798 (3d Cir. 2007). In Steigerwalt, an employee claimed his employer committed an intentional tort by directing him to handle toxic chemicals without protective gear. Id. This case is distinguishable for at least two reasons. First, the arbitration provision in Steigerwalt explicitly stated that it applied to torts, thus the agreement could be reasonably read to apply to torts. Here, the arbitration provision at issue does not include the same explicit language. Second, in Steigerwalt the referenced intentional tort did not involve claims of sexual battery and assault. Steigerwalt did not address allegations remotely similar to the instant case.

24

Further, the Court is not convinced by defendants' argument that plaintiff's complaint concedes that all of her claims arise out of and/or relate to the issues surrounding the alleged securities law violations. Defs.' Br. at 9 n.4 (citing Compl. ¶ 12 ("All other state claims . . . may be permitted to be brought into Federal Court, under 19 U.S.C. § 1367, as said claims arise out of and/or relate to the issues surrounding the . . . Securities Law violations.")). The general references in plaintiff's complaint do not amount to what defendants suggest – a concession that plaintiff's state law claims are subject to the arbitration provision. Rather, plaintiff's statement was made for purposes of alleging supplemental jurisdiction. Defendants further cite plaintiff's averment that, "[d]efendant Graham, in his capacity as plaintiff's financial broker and tax preparer . . . [coerced plaintiff to submit] to defendant Graham's sexual proclivities." Compl. ¶ 37. Again, this language does not lead the Court to conclude that plaintiff conceded that the all of her claims are subject to arbitration. In fact the opposite is true. Plaintiff is contesting arbitration. The Court agrees with plaintiff that, "depending on when and in what capacity Mr. Graham was in, at the time of the alleged incident, is crucial in determining whether or not such action should fall under the alleged arbitration

25

agreement." Pl.'s Br. at 11. Therefore, in sum, plaintiff's NJLAD claim against all defendants and plaintiff's assault and sexual battery claims against Graham are not subject to arbitration. Plaintiff's remaining claims, which generally concern financial mismanagement and tax-related issues, are subject to arbitration.

### 5. Bifurcation and Stay

Having determined that some of plaintiff's claims are subject to arbitration and some are not, the Court must decide whether plaintiff's non-arbitrable claims should be stayed pending the results of her arbitration. FAA, 9 U.S.C. § 3 (authorizing court to stay proceedings pending arbitration where any issue in suit is referred to arbitration). "If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim." N.J.S.A. 2A:23B-7(g); see also Edmondson v. Lilliston Ford, Inc., --- Fed. Appx. ---, 2014 WL 6657065, at *2 (3d Cir. Nov. 25, 2014) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.") (citing Lloyd v. Hovensa, LLC, 369 F.3d 263, 269 (3d Cir. 2004)). Here, because the Court has found some claims arbitrable it will stay plaintiff's sexual

battery, assault and NJLAD claims. <u>See</u> N.J.S.A. 2A:23B-7(g). After plaintiff's financial mismanagement and tax-related claims are arbitrated, the stay will be lifted so that plaintiff will be permitted to litigate her non-arbitrable claims. Those claims will be administratively terminated without prejudice to plaintiff's right to activate the litigation after the arbitration is complete.[9]

**CONCLUSION**

In conclusion, the Court finds the following claims are not subject to arbitration: (1) the NJLAD claim against all defendants; (2) the sexual battery claim against Graham individually; and (3) the assault claim against Graham individually. The remaining claims, asserted against all defendants, which generally concern alleged financial and tax mismanagement, are arbitrable. The Court will stay this civil action while the arbitrable claims are arbitrated. An Order consistent with this Opinion follows.

s/ Joel Schneider<br>JOEL SCHNEIDER<br>United States Magistrate Judge

Dated: January 30, 2015

---

[9] If the arbitrator rules that plaintiff's contracts were signed under duress and are therefore invalid, plaintiff may move to litigate all of her claims in the re-opened case.